UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JASON CRAVEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:23-CV-00180-JRG-CHS |
| | ) | |
| DAVID B. RAUSCH, et al, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

In this action pursuant to 42 U.S.C. § 1983, Plaintiff Jason Craven challenges the constitutionality of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 ("the Act"), Tenn. Code Ann. §§ 40-39-201 to -218 (2024). Defendant David Rausch, Director of the Tennessee Bureau of Investigation ("TBI"), and the County Defendants, Sheriff Austin Garrett and the Hamilton County Sheriff's Office, have filed motions to dismiss the Third Amended Complaint (hereafter "the Complaint") [Doc. 73]. [Rausch's Mot., Doc. 78; Garrett's Mot., Doc 86]. Plaintiff filed a motion for extension of time to file his response to the County Defendants' motion to dismiss [Doc. 89], which, as a preliminary matter, is **GRANTED**.

As the County Defendants point out, a sheriff's office is not a cognizable legal entity for the purposes of a § 1983 suit. *See Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-CV-0496, 2010 U.S. Dist. LEXIS 87862, at *5 (M.D. Tenn. Aug. 25, 2010) (collecting cases) ("[F]ederal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit."). Because the Sheriff's Office is not a proper party to this action, its motion to dismiss will be **GRANTED**. As discussed below, Director Rausch and Sheriff Garrett's motions to dismiss will be **GRANTED in part and**

**DENIED in part**.

## I.      BACKGROUND

### A.      Factual Background

In 2012, Plaintiff was convicted of child molestation in Georgia. [Compl., Doc. 73 ¶ 17]. Based on that conviction, he was sentenced to eighteen months' imprisonment, followed by eighteen years and six months of probation. [*Id.* 18]. Upon his release from incarceration, Plaintiff registered with the Georgia Sex Offender Registry ("GSOR"). At some point, he also registered with the Tennessee Sex Offender Registry ("TSOR"), because he conducted a significant amount of business in Tennessee. [*Id.* ¶ 20]. Plaintiff moved from Georgia to Hamilton County, Tennessee in 2019. [*Id.*].

In 2022, Plaintiff completed his term of probation, which had been reduced to ten years, and applied for release from the GSOR. [*Id.* ¶ 18–19]. The GSOR Review Board conducted an assessment and found that Plaintiff was at low risk to reoffend. [*Id.*]. Plaintiff then petitioned the Superior Court of Dade County, Georgia for removal from the registry pursuant to O.C.G.A. § 42-1-19. [*Id.*]. In December 2022, the Superior Court granted Plaintiff's petition, thereby permanently releasing him from the GSOR. [*Id.*].

After being removed from the Georgia registry, Plaintiff contacted the TBI to request removal from the sex offender registry in Tennessee. [*Id.* ¶ 20]. However, in a May 2023 letter, the TBI denied his request. [*Id.*; TBI Letter, Compl., Ex. 4]. The letter explained that upon review of Plaintiff's documentation, the TBI had now determined that Plaintiff's Georgia conviction for child molestation was equivalent to a Tennessee conviction for aggravated sexual battery. [TBI Letter]. Consequently, Plaintiff had been reclassified as a "violent sexual offender." [*Id.*]. Also, because Plaintiff's victim was twelve years old or less at the time of his offense, he was now

2

designated an "offender against children." [*Id.*]. Because of these classifications, the letter explained, Plaintiff is subject to registration and quarterly monitoring requirements for life. [*Id.*]. If Plaintiff wished to contest the decision he could file a petition in a Tennessee chancery court. [*Id.*].

Because of his continuing obligation to comply with the Act, Plaintiff is subject to "continuous reporting, surveillance, and supervision." [*Id.* ¶ 48]. The Act also "severely limits Plaintiff's ability to find housing and employment; get an education; travel; engage in speech activities (including use of the internet); be free from harassment and stigma; and understand what is required of him under the Act." [*Id.*]. Moreover, his status as a registrant "triggers a vast array of additional obligations, disabilities, and restraints under other federal, state, and local laws, as well as private policies barring or limiting registrants from access to goods or services available to the public." [*Id.* ¶ 49].

## B. Legal Background

Tennessee has had a sex offender registry in some form since 1994, with the current Act having been adopted in 2004. Tenn. Code Ann. §§ 40-39-201 to -218 (2024). Since its enactment, the current Act has undergone a number of amendments, which have increased the responsibilities and restrictions placed upon sex offenders. The Court reviews only those aspects of the Act that are most relevant to the instant case.

### 1. Classification

Under the Act, adult offenders are divided into two tiers, "sexual offenders," and "violent sexual offenders." Tenn. Code Ann. § 40-39-218. These classifications—which have been part of the Act since 2004—are based solely on an offender's offense of conviction.[1] *Id.* An offender's

---

[1] The Tennessee offenses of conviction that qualify an offender as a "violent sexual offender"—such as rape and aggravated sexual battery— are specifically listed in the Act. Tenn. Code Ann. § 40-39-202(31).

classification dictates the minimum length of time he must spend on the registry and the frequency of reporting. *Id.* §§ 40-39-204, 40-39-207(a), (g)."Sexual offenders" must report annually in person and may petition the TBI for termination of registry requirements after ten years. *Id.* §§ 40-39-204(c), 40-39-207(a)(1). In contrast, "violent sexual offenders" must report quarterly in person and comply with the registry requirements for life. *Id.* §§ 40-39-204(b)(1), 40-39-207(g)(2)(B).

In 2014, the "offender against children" designation was added to the Act. 2014 Tenn. Pub. Acts ch. 770 § 1, 2. This designation applies to any sexual offender or violent sexual offender whose victim was twelve years of age or younger. Tenn. Code Ann. § 40-39-202(10). An offender against children must comply with registry requirements for life, regardless of whether he has been classified as a violent sexual offender. *Id.* § 40-39-207(g)(2)(C).

### 2.    Registration and Reporting Requirements

The Act requires offenders to report a substantial amount of personal information. Tenn. Code Ann. § 40-39-203(i). Much of this information is then published on the sex offender registry website, including the offender's name, address, employer, vehicle registration and license tag numbers, a current photo, criminal history, the offense(s) of conviction, and whether the offender is an offender against children. *Id.* § 40-39-206(d). In addition to reporting on an annual or quarterly basis, offenders must update any change to their information within forty-eight hours. *Id.* § 40-39-203(a)(4).

Offenders are also required to disclose a complete list of their internet identifiers, which consists of their "electronic mail address information, including usernames, any social media accounts the offender uses or intends to use, instant message, other internet communication platforms or devices, and the offender's username, screen name, or other method by which the offender accesses these accounts or websites[.]" *Id.* § 40-39-203(i)(17). This information is

4

accessible by law enforcement. *Id.* §§ 40-39-203(i), 40-39-206(d). Upon request, the TBI may share an offender's internet identifier information with online businesses that request the information for the purpose of prescreening users. *Id.* § 40-39-203(m). An offender must report new internet identifiers within three days. *Id.* § 40-39-203(a)(7).

### 3. Geographical Restrictions and Travel

The Act imposes geographical restrictions, also known as exclusion zones. *See* Tenn. Code Ann. § 40-39-211. Under these restrictions, an offender is barred from residing or working within 1,000 feet of any school, childcare facility, public park, playground, recreation center or public athletic field available for use by the general public. *Id.* § 40-39-211(a)(1). An offender is also prohibited from standing, sitting "idly," or remaining within 1,000 feet of these locations if he "has reason to believe" minors are present and does not have a "reason or relationship involving custody of or responsibility for" a minor or "any other specific or legitimate reason for being there." *Id.* § 40-39-211(d)(1)(B). Moreover, an offender may not "[b]e upon or remain on the premises of any building or grounds of any public school [or] public park . . . when the offender has reason to believe children under eighteen (18) years of age are present." *Id.* § 40-39-211(d)(1)(A).

Relevant to travel, an offender must obtain, and carry at all times, a driver's license with a code that law enforcement recognizes as designating a sex offender. *Id.* §§ 40-39-213(a), 55-50-353(a). As part of reporting requirements, an offender must also provide updated registration information for any vehicle "used or owned" by him and a current photograph of that vehicle. *Id.* § 40-39-203(i)(10), (19). And before leaving the country, an offender must provide at least twenty-one days' notice, although there are exceptions for emergencies and those who engage in frequent international travel. *Id.* § 40-39-204(h).

### 4. Criminal Liability

The Act imposes significant criminal penalties for noncompliance. To "knowingly" fail to comply with any requirement of the Act constitutes a class E felony, which is punishable by up to six years in prison. Tenn. Code Ann. §§ 40-35-111(b)(5), 40-39-208(a), (b). Those convicted of violating the Act's requirements are subject to mandatory minimum sentences and fines of ninety days and $350 for the first offense, 180 days and $600 for the second offense, and one year and $1,100 for the third or subsequent offense. *Id.* § 40-39-208(a)–(e).

###    C.    The Instant Lawsuit

Plaintiff filed this § 1983 action, alleging that the Act violates the Ex Post Facto Clause by increasing his punishment retroactively (Count I); the Due Process Clause by restricting his ability to travel (Count II); the Due Process Clause by reclassifying him without a notice or a hearing (Count III); the Due Process Clause by preventing him from working in exclusion zones (Count IV); the First Amendment by destroying his online anonymity (Count V, part 1); the First Amendment by restricting access to places commonly used for speech (Count V, part 2); the Eighth Amendment by subjecting him to a lifetime registration requirement (Count VI); the Due Process clause by imposing criminal liability without proof of guilty knowledge (Count VII); and the Due Process Clause by being unconstitutionally vague and impossible for him to comply with (Count VIII). [Compl. ¶¶ 113–42]. He seeks injunctive and declaratory relief against the Defendants, TBI Director Rausch and Sheriff Garrett, in their official capacities. [*Id.* ¶¶ 12, 23, 27].

Director Rausch filed a motion to dismiss, alleging that the Court lacks subject matter jurisdiction and that Plaintiff fails to state a claim. [Rausch's Mot.; Rausch's Memo, Doc. 79]. Plaintiff responded in opposition. [Pl.'s Resp. to Rausch's Mot., Doc. 85]. Sheriff Garrett then filed a motion to dismiss, arguing that the Court lacks subject matter jurisdiction and adopting Director Rausch's arguments regarding why Plaintiff fails to state a claim. [Garrett's Mot.;

Garrett's Memo, Doc. 87]. In response, Plaintiff adopted the arguments against dismissal that he raised in his response to Director Rausch's motion. [Pl.'s Resp. to Garrett's Mot., Doc. 91]. Defendants did not file a reply and the time in which to do so has passed.

On November 21, 2025, Plaintiff submitted as supplemental authority the Middle District of Tennessee's opinion in *Doe v. Lee*, No. 3:21-CV-00590, 2025 LEXIS 498679, at \*35 (M.D. Tenn. Nov. 6, 2025).[2] [Pl.'s Supp. Auth., Doc. 100].

This matter is ripe for review.

## II.     SUBJECT MATTER JURISDICTION

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss based on the Court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Here, Defendants challenge the Court's subject matter jurisdiction based on standing and sovereign immunity. Both of these arguments fail.

### A.     Standing

Article III standing limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const., Article III, § 2. To establish standing, "[1] a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; [2] the injury must be 'fairly traceable' to the challenged action; and [3] there must be a substantial likelihood that the relief requested will redress or prevent plaintiff's injury." *Coyne v. Am. Tobacco Co*., 183 F.3d 488, 494 (6th Cir. 1999) (citation omitted). A plaintiff must have standing throughout every stage

---

[2] Plaintiff styled this filing as "Plaintiff's Supplemental Authority in Support of Motion for Preliminary Injunction." [Doc. 100]. However, the title appears to be an error,  since an agreed preliminary injunction was entered in this case on May 22, 2025 [Doc. 93] and there is no motion for preliminary injunction pending before the Court. Accordingly, the Court construes the submission as a supplement to Plaintiff's responses in opposition to Defendants' motions to dismiss.

of litigation for each claim and form of relief sought. *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021).

As the Sixth Circuit has explained, Director Rausch is a proper party to be sued regarding "those portions of Tennessee's statutes that come under his responsibility or enforcement authority." *Doe v. Lee*, 102 F.4th 330, 336 (6th Cir. 2024) (finding that Director Rausch was proper party to be sued in ex post facto challenge to the Act). Director Rausch's statutory responsibilities under the Act include administering the statewide sex offender registry database, Tenn. Code Ann. § 40-39-206(a); maintaining the publicly accessible sex offender registry website, § 40-39-206(d); classifying offenders, § 40-35-218[3]; and rendering decisions on offenders' requests to be removed from the registry, § 40-39-207. He is also responsible for providing statutorily required notices to registrants, §§ 40-39-205(a), 40-39- 218(c); developing registration forms and instructions, § 40-39-205(a); promulgating rules to implement and administer the registry, § 40-39-206(f); and sharing information with law enforcement regarding potential violations, § 40-39-206(b).

Director Rausch argues that he is not a proper party to be sued because he is not responsible for enforcing reporting violations or exclusion zones; the TBI is not the designated law enforcement agency where Plaintiff must report; and Plaintiff cannot show that Director Rausch is the "but for" cause of any other officer's conduct. [Rausch's Memo at 5–6]. However, given Director Rausch's integral role in Tennessee's sex offender registry scheme, Plaintiff's injuries are "fairly traceable" to him.[4] And it is sufficiently probable that an injunction against Director Rausch

---

[3] At the time Plaintiff was classified, the TBI was responsible for classifying offenders, although it did not receive express statutory authority to perform that role until March 2025. *See* Tenn. Code Ann. § 40-39-218.

[4] The "traceability" requirement for Article III standing "is not focused on whether the defendant 'caused' the plaintiff's injury in the liability sense." *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 796 (6th Cir. 2009). "[E]ven harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003); *Parsons v. United States DOJ*, 801 F.3d 701, 713–714 (6th Cir. 2015) ("In the nebulous land of 'fairly traceable,' where causation

8

would provide Plaintiff with at least some redress on his claims. Therefore, Director Rausch is a proper party to be sued. *See Kelly v. Lee*, No. 1:18-CV-00170-DCLC, 2020 U.S. Dist. LEXIS 78369, at *11 (E.D. Tenn. May 4, 2020) (finding that because Director Rausch is "intricately involved in the administration of the Act" he was a proper defendant for Ex Post Facto Clause, vagueness, and First Amendment challenges to the Act); *Doe v. Gwyn*, No. 3:17-CV-504, 2018 U.S. Dist. LEXIS 69245, at *10-11 (E.D. Tenn. Apr. 25, 2018) (finding that Director of the TBI was proper party to be sued on ex post facto and due process challenges to the Act); *but see Million v. Rausch*, No. 3:22-CV-453, 2025 LEXIS 58169 (E.D. Tenn. Apr. 29, 2025) (concluding that plaintiff had standing to sue Director Rausch on an ex post facto challenge to the Act, but failed to adequately allege standing for due process claims).

As Sheriff of Hamilton County, Garrett is in charge of the designated law enforcement agency to which Plaintiff must report to verify and update his information. Tenn. Code Ann. § 40-39-202(2), (14). And he is tasked with criminal enforcement of the Act. As such, Plaintiff's harms are fairly traceable to Sheriff Garrett and an injunction against Sheriff Garrett could provide Plaintiff with relief. Sheriff Garrett contends that he cannot provide Plaintiff any redress because "[t]he Sheriff and the Sheriff's Office are bound to follow the law as it currently exists." [Garrett's Memo at 9]. However, as discussed below, under the *Ex parte Young* doctrine, a plaintiff may obtain injunctive relief against an unconstitutional statute by filing suit against an official charged with enforcing the challenged law. *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017). "It does not matter that the defendant official believes himself to be merely following the letter of a statute."

---

means more than speculative but less than but-for, the allegation that a defendant's conduct was a motivating factor in the third party's injurious actions satisfies the requisite standard.").

*Nashville Cmty. Bail Fund v. Gentry*, 446 F. Supp. 3d 282, 301 (M.D. Tenn. 2020). Thus, like Director Rausch, Sheriff Garrett is a proper party to be sued.

### B. Sovereign Immunity

Defendants also argue that the Court lacks subject matter jurisdiction because they are entitled to sovereign immunity. [Rausch's Memo at 4–5]. Under the Eleventh Amendment, states and state officials generally enjoy sovereign immunity from suits by private citizens. *Doe v. Dewine*, 910 F.3d at 848. However, the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908) provides an exception to that rule.

Under the *Ex parte Young* doctrine, sovereign immunity does not bar "claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations." *Boler*, 865 F.3d at 412. To determine if *Ex parte Young* applies, the Court engages in a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (citing *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003)). A state official may be sued under the *Ex parte Young* doctrine if he has "some connection with the enforcement of the act," meaning that there must be "a realistic possibility the official will take legal or administrative actions against the plaintiff's interests." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015). This "connection" requirement significantly overlaps with the standing requirement for traceability and redressability, discussed above. *See City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (observing that "*Ex Parte Young* and standing analysis 'significantly overlap.'").

As a state official, Director Rausch would typically be immune from suit in federal court. However, the Complaint seeks only prospective relief to remedy alleged ongoing constitutional

harms. And as discussed above in the Court's standing analysis, Director Rausch has extensive administrative responsibilities under the Act. Thus, there is a realistic possibility that he will take administrative actions that are adverse to Plaintiff's interests. Director Rausch argues that the *Ex parte Young* doctrine does not apply because none of the challenged provisions that fall within his enforcement authority run "contrary to federal law." [Rausch's Memo at 5]. However, that is a merits argument. And "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 646 (2002). Because the requirements for the *Ex parte Young* exception have been met, Director Rausch may be sued without running afoul of sovereign immunity.

As a county official, Sheriff Garrett would not typically be entitled to sovereign immunity. Nevertheless, Sheriff Garrett asserts that he is immune from suit because "when Sheriff's Office personnel are providing forms, collecting information and following up on violations, they are acting at the behest of the TBI on behalf of the State, and, therefore, act as an arm of the State and are protected by the State's sovereign immunity." [Garrett's Memo at 7]. County officials are entitled to sovereign immunity when they perform non-discretionary functions in compliance with state mandates. *McNeil v. Cmty. Prob. Services, LLC*, 945 F.3d 991, 995 (6th Cir. 2019). But even assuming that all of Sheriff Garrett's registry-related functions are performed as an "arm of the state," he can still be sued under the *Ex parte Young* exception. The *Ex parte Young* exception applies to Plaintiff's suit against Sheriff Garrett because again, the Complaint seeks only prospective relief for constitutional harms. And as discussed above, Sheriff Garrett is tasked with substantial enforcement duties, giving him the requisite "connection to the act."

Because Plaintiff has Article III standing to sue Defendants and they are not entitled to sovereign immunity, the Court will consider the merits of Plaintiff's claims.

### III. FAILURE TO STATE A CLAIM

In addition to their challenges based on subject matter jurisdiction, Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on such a motion, the Court must "construe the complaint in the light most favorable to the non-moving party, accept the well-pleaded factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citation omitted).

#### A. Ex Post Facto (Count I)

Count I alleges that the Act violates the constitutional prohibition against ex post facto laws by increasing the punishment for Plaintiff's offense. [Compl. ¶ 113]. Defendants contend that Plaintiff's ex post facto claim fails because every major substantive requirement in the Act—including the "violent sexual offender" classification—was in effect when he offended in 2011. [Rausch's Memo at 6]. In response, Plaintiff asserts that the "offender against children" designation was not added to the Act until 2014. [Pl.'s Resp. to Rausch at 6]. He notes that this label appears under his name on the TSOR website. [*Id.*].

"An ex post facto law is one which imposes a punishment for an act which was not punishable at the time it was committed, or a punishment in addition to that then prescribed." *Burgess v. Salmon,* 97 U.S. 381, 384 (1878). To prevail on an ex post facto claim, Plaintiff must establish two elements: (1) that the law is enforced against him retroactively  and (2) that the law is punitive, as opposed to civil. *Doe v. Snyder*, 834 F.3d 696, 699 (6th Cir. 2016)

(recognizing that "the Constitution's ban on Ex Post Facto laws does not bar *all* retroactive lawmaking, but only retroactive punishment") (emphasis in original). An "ostensibly civil and regulatory law," such as the Act, is not deemed punitive unless "the plaintiff can show by the clearest proof that what has been denominated a civil remedy is, in fact, a criminal penalty." *Id.* at 700 (citing *Smith v. Doe*, 538 U.S. 84, 92 (2003)).

Traditionally, courts have viewed sex offender registries as civil regulatory schemes, which do not impose punishment. *See Smith*, 538 U.S. at 105–06 (finding that Alaska's first-generation sex offender registry law was non-punitive and therefore could be enforced retroactively without violating the Ex Post Facto Clause); *Doe v. Bredesen*, 507 F.3d 998, 1003–07 (6th Cir. 2007) (rejecting an ex post facto challenge to an early version of the Act). However, in *Snyder*, the Sixth Circuit held that certain aspects of the Michigan sex offender registry scheme were punitive and therefore violate the Ex Post Facto Clause when applied retroactively: (1) severe restrictions on where offenders can live, work, and "loiter"; (2) categorizing offenders into "tiers ostensibly corresponding to present dangerousness without any individualized assessment"; and (3) "time-consuming and cumbersome in-person reporting." *Snyder*, 834 F.3d at 705. Tennessee's Act is also punitive, to the extent its provisions mirror those enjoined in *Snyder*. *Doe v. Lee*, 102 F.4th at 339.

Here, Plaintiff fails to show that a punitive aspect of the Act has been applied to him retroactively. When he offended in 2011, the Act already included geographic restrictions and divided offenders into the categories of "sexual offender" and "violent sexual offender" without individualized assessment. Also, according to the Sixth Circuit, *Snyder* does not call into question Tennessee's reporting requirements, which are less onerous than those imposed in Michigan. *Id.*, n.2.

Plaintiff is correct that the "offender against children" designation has been applied to him retroactively, thereby satisfying the first prong of an ex post facto claim. But he fails to establish the second prong—that this change in the law increased his punishment. The lifetime reporting requirement that goes along with the "offender against children" designation does not increase his punishment because he is already subject to a lifetime reporting requirement due to his status as a violent sexual offender. It appears that the only other consequence of the "offender against children" designation is that the label appears by Plaintiff's photo on the TSOR website. But Plaintiff fails to show that this descriptive label adds to his punishment, when by statute, his conviction for "child molestation" is also listed on the website. Tenn. Code Ann. § 40-39-206(d).[5]

Because Plaintiff fails to plausibly allege a violation of the Ex Post Facto Clause, Defendants' motions to dismiss this claim will be granted.[6]

## B. Eighth Amendment (Count VI)

Next, Plaintiff asserts that his "life sentence" on the registry violates the Eighth Amendment prohibition on cruel and unusual punishment. [Compl. ¶¶ 130–131]. Under the Eighth Amendment, a punishment is cruel and unusual if it "(1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Coker v. Georgia,* 433 U.S. 584, 592 (1977).

---

[5] Notably, in the Middle District of Tennessee, courts have found that being designated an "offender against children" added to an offender's ignominy by falsely suggesting that he victimized more than one child. *See Doe v. Lee*, No. 3:21-CV-00590, 2025 LEXIS 498679, at *35 (M.D. Tenn. Nov. 6, 2025); *Doe v. Lee*, 518 F. Supp. 3d 1157, 1178 (M.D. Tenn. 2021). Plaintiff has not raised that argument here. But even if he had, the Court does not find it plausible that the "offender against children" label is punitive in this case, since Plaintiff's offense of conviction, "*child* molestation," is included with his information on the registry website, indicating that he had a single victim.

[6] The Complaint references several other provisions in the Act that post-date Plaintiff's offense, such as the 21-day notice requirement for international travel, Tenn. Code Ann. § 40-39-204(h). But Plaintiff has not alleged facts demonstrating that those requirements are punitive or connected them to his ex post facto claim.

14

Of course, to implicate the Eighth Amendment in the first place, a law must be punitive. The analysis of whether a law imposes punishment is the same in the ex post facto and Eighth Amendment contexts. *See M.S. Willman v. AG of the United States*, 972 F.3d 819, 825 (6th Cir. 2020) (finding that because the federal sex offender registry law "is not a punishment for purposes of the Ex Post Facto Clause," "[i]t follows, therefore, that [the law] is not punishment for purposes of the Eighth Amendment either"). The plaintiff must show by the "clearest proof" that an ostensibly civil, regulatory law—such as the Act—is really a criminal penalty. *Snyder*, 834 F.3d at 699.

The Supreme Court has made clear that a lifetime obligation to comply with a civil, regulatory scheme does not constitute punishment. *Smith*, 538 U.S. at 104. However, in *Snyder*, the Sixth Circuit recognized that overly restrictive exclusion zones and classification into tiers of dangerousness without individualized assessment are punitive. *See Snyder*, 834 F.3d at 705 (observing that these restrictions were "supported by—at best—scant evidence that [they] serve the professed purpose of keeping . . . communities safe."). And it is at least plausible that a lifetime requirement to comply with those restrictions imposes needless pain and suffering, without making a measurable contribution to the legitimate goals of punishment. Accordingly, to the extent Plaintiff asserts that the punitive portions of the Act render his lifetime registration requirement cruel and unusual, he states a colorable Eighth Amendment claim. *See Nunley v. Rausch*, No. 3:23-CV-00100, at *8 (M.D. Tenn. May 22, 2023) ("[B]ecause TSORA may be deemed punitive . . . and because . . . Plaintiff has alleged that TSORA is punitive and his punishments are disproportionate to his crime in violation of the Eighth Amendment, the Court finds that the complaint states a colorable Eighth Amendment cruel and unusual punishment claim under Section 1983."). Defendants' motions to dismiss this claim will be denied.

15

## C. Due Process

### 1. Procedural Due Process (Count III)

In Count III, Plaintiff claims that his procedural due process rights were violated because the TBI reclassified him as a violent sexual offender and offender against children without notice or an opportunity to be heard regarding his likelihood to reoffend. [Compl. ¶¶ 118–19]. Defendants assert that Plaintiff is not entitled to an individualized assessment of his dangerousness because his classification was based on his offense of conviction, which he already had a procedurally safeguarded opportunity to contest.[7] [Rausch's Memo at 12].

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. Due process has procedural and substantive components. *Bambach v. Moegle*, 92 F.4th 615, 624 (6th Cir. 2024). As relevant here, "[p]rocedural due process rights protect individuals from deficient procedures that lead to the deprivation of cognizable liberty interests." *Id.* (citation and internal quotation marks omitted). To state a procedural due process claim, Plaintiff must allege (1) that he has a life, liberty, or property interest protected by the Due Process Clause and (2) that the government deprived him of that interest without adequate process. *Fields v. Henry Cnty*, 701 F.3d 180, 185 (6th Cir. 2012).

Here, Plaintiff fails to show that he was deprived of adequate process. As alleged in the Complaint, he was reclassified as a violent sexual offender after the TBI determined that his Georgia child molestation conviction was substantially similar to a Tennessee conviction for aggravated sexual battery. If those two offenses are comparable—and Plaintiff has not alleged

---

[7] Defendants also maintain that Plaintiff's procedural due process claim is untimely under Tennessee's one-year statute of limitations, since he first registered in Tennessee in 2019. [Rausch's Memo at 13]. However, Plaintiff was not reclassified as a "violent sexual offender" and "offender against children" until May 2023. [TBI Letter]. Accordingly, the Court finds that Plaintiff was well within the one-year limitations period when he filed suit in August 2023.

16

otherwise—he is properly classified as a violent sexual offender under Tennessee's statutory scheme. *See* Tenn. Code Ann. § 40-39-202(1)(C) (listing aggravated sexual battery among those offenses deemed violent). Further, the only fact that was relevant to Plaintiff's classification as an offender against children was the age of his victim, a fact used to establish his conviction.

Because Tennessee classifies offenders based solely on their conviction, Plaintiff's likelihood to reoffend was not relevant to his classification. Thus, he is not entitled to a hearing on that issue. *See Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 3–4 (2003) ("[D]ue process does not require the opportunity to prove a fact that is not material to the State's statutory scheme."); *Doe v. Dewine*, 910 F.3d at 852–53 (finding that offender was not entitled to a hearing on his lifetime registration requirement, since present dangerousness was not material to the Ohio sex offender registration scheme). Plaintiff may be arguing that current dangerousness *should* be a factor in determining an offender's classification. But to the extent he makes that argument, he attempts to raise a substantive, not procedural due process claim. *See Conn. Dep't of Pub. Safety*, 538 U.S. at 8 (explaining that a claim arguing that a substantive rule of law is defective must be analyzed in terms of substantive, rather than procedural due process).

As a matter of procedural due process, this claim fails. Hence, Defendants' motions to dismiss Count III will be granted.

### 2. Substantive Due Process

Counts II and IV, which allege violations of Plaintiff's fundamental rights to travel and work, rely on the substantive component of the Due Process Clause. [Compl. ¶¶ 114–17, 120–24]. Substantive due process rights "ensure that—regardless of the procedural protections available—the government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." *Bambach*, 92 F.4th at 624 (citation and internal

17

quotation marks omitted). Notably, "[t]he interests protected by substantive due process are . . . much narrower than those protected by procedural due process," *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003), extending only to those rights that are "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed," *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (cleaned up). "A fundamental right will only be implicated by government action that, at a minimum, *significantly* interferes with the exercise of a fundamental right." *Beydoun v. Sessions*, 871 F.3d 459, 467 (6th Cir. 2017) (emphasis in original) (cleaned up).

### a.  Travel (Count II)

Plaintiff alleges that his status as a sex offender registrant severely restricts his ability to travel, both in other states and abroad. [Compl. ¶¶ 67, 114–15]. Defendants assert that this claim fails because the Act does not infringe on any fundamental right to travel, and they cannot be held liable for the laws of other jurisdictions. [Rausch's Memo at 10–11].

The right to interstate travel has long been recognized as a fundamental right under the Constitution. *Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 901 (1986). And the Sixth Circuit has recognized a fundamental right to intrastate travel. *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002) (recognizing a fundamental right to "travel locally through public spaces and roadways"). But a state law only "implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right." *LULAC v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007) (citation omitted). The fundamental right to travel is not implicated if the inconvenience imposed by a regulation is "incidental and negligible." *Id.*

Here, Plaintiff alleges several facts regarding the Act's effect on his domestic travel. Specifically, he complains that he must tailor his travel around the Act's quarterly reporting requirements; that he must provide complete information on his vehicles each time he updates his registration information; and that he is required to maintain a Tennessee driver's license with a code, alerting law enforcement that he is on the TSOR. [Compl. ¶¶ 68, 75–76]. These requirements may be inconvenient. But Plaintiff does not allege that their primary purpose is to impede travel. And he does not allege facts demonstrating that they have deterred him from travelling or penalized him for doing so.

In addition, Plaintiff complains that he must comply with the Act's 21-day notice requirement for international travel, Tenn. Code Ann. § 40-39-204(h). [*Id.* ¶ 67]. Unlike the fundamental right to interstate travel, "the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of [the] Fifth Amendment." *Califano v. Torres*, 435 U.S. 1, 4 n.6 (1978). As such, regulations burdening this "right" are only subject to rational basis review. *See id.* (observing that the "right" to international travel "can be regulated within the bounds of due process"). That standard is easily met here. *Doe v. Haslam*, No. 3:16-CV-02862, 2017 LEXIS 25070, at *51 (M.D. Tenn. Nov. 9, 2017) ("Insofar as the Court recognizes a constitutional right to international travel, that right is not so highly protected that it is violated by the passage of a 21-day notification requirement based on the important public purposes underlying the Act.").

Finally, Plaintiff makes several allegations that are directed, not at requirements of the Act, but at collateral consequences of his status as a sex offender registrant. Specifically, he asserts that he is burdened by his obligation to comply with the sex offender laws of other states he visits; by federal sex offender regulations, including a requirement that he obtain a passport indicating his

19

sex offender status; and by the likelihood that foreign countries will deny him entry. [*Id.* ¶¶ 69–74]. However, Plaintiff fails to show why Defendants are proper parties to be sued regarding the laws and policies of other jurisdictions, over which they have no authority.

Because Plaintiff fails to show the Act burdens his fundamental right to travel, Defendants' motions to dismiss this claim will be granted.

### b.      Work (Count IV)

Next, Plaintiff alleges that the Act's geographical restrictions, Tenn. Code Ann. § 40-39-211(a)(1)—which bar him from working within 1,000 feet of specified locations, such as schools and public parks—create a "wholesale barrier" to his employment as a construction manager. [Compl. ¶ 122]. He complains that he has been unable to accept projects within exclusion zones and had to decline a lucrative position with a company because its office was located in an exclusion zone. [*Id.* ¶¶ 64, 121]. Defendants maintain that this claim fails because restrictions on employment do not implicate a fundamental right and are only subject to rational basis review. [Rausch's Memo at 11–12]. The Court agrees.

While the "freedom to choose and pursue a career" is a fundamental right, *Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir. 1983), there is no "general right to private employment," *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999). In other words, "[l]egislation that bars individuals from pursuing particular careers  may infringe on a fundamental right, but legislation that incidentally makes obtaining private employment more difficult does not." *Does v. Whitmer*, 751 F. Supp. 3d 761, 801–02 (E.D. Mich. 2024). Geographical restrictions may make it more difficult for Plaintiff to obtain employment. But he has not been barred from pursuing a career in the construction industry and is free to engage in construction work that is not located within an exclusion zone. Accordingly, the Act's geographical restrictions do not infringe

20

on Plaintiff's fundamental right to work. Defendants' motions to dismiss this claim will be granted.

### 3. Vagueness and Impossibility (Count VIII)

Count VIII alleges that the Act's many requirements, and in particular the geographical restrictions, are vague and impossible to comply with. [Compl. ¶¶ 85–94, 134–37]. Defendants argue that the geographical restrictions are not vague because they are sufficiently clear to give a person of ordinary intelligence fair notice and to prevent arbitrary enforcement. [Rausch's Memo at 15]. Further, Defendants contend that compliance with the Act is not impossible because there are no conflicting statutory obligations. [*Id.*].

The void-for-vagueness doctrine is grounded in principles of due process. *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999) ("The Due Process Clauses of the Fifth and Fourteenth Amendments provide the constitutional foundation for the void-for-vagueness doctrine."). A law is void for vagueness if it (1) defines an offense in such a way that ordinary people cannot understand what is prohibited or (2) encourages arbitrary or discriminatory enforcement. *Id.* "Vague laws are subject to particular scrutiny when criminal sanctions are threatened or constitutional rights are at risk." *United States v. Caseer*, 399 F.3d 828, 835 (6th Cir. 2005). Moreover, "[h]olding an individual criminally liable for failing to comply with a duty imposed by statute, with which it is legally impossible to comply, deprives that person of his due process rights." *Doe v. Snyder*, 101 F. Supp. 3d 722, 724 (E.D. Mich. 2015).

Here, Plaintiff has plausibly alleged that at least one provision of the Act—the geographic restrictions on loitering—may be unconstitutionally vague. [Compl. ¶¶ 89–90]. That provision prohibits standing, sitting "idly," or remaining within 1,000 feet of schools, parks, or other specified locations if the offender "has reason to believe" minors are present and does not have a "reason or relationship involving custody of or responsibility for" a minor or "any other specific

21

or legitimate reason for being there." Tenn. Code Ann. § 40-39-211(d)(1)(B). As Plaintiff points out, it is unclear what a law enforcement officer might consider a "legitimate reason for being there." [*Id.* ¶ 90]. As another court has recognized, it is also unclear where the line would be drawn between standing or sitting "idly," as opposed to standing or sitting "non-idly." *Doe v. Haslam*, 2017 U.S. Dist. LEXIS 25070, at *58–59 (denying motion to dismiss offender's vagueness challenge to Act). This lack of specificity in the statute could invite arbitrary enforcement.

With respect to Plaintiff's allegation of impossibility, his apparent ability to comply with exclusion zones for multiple years, without incident, suggests that they are not impossible to comply with. Nevertheless, the Court accepts as true his allegation that he often cannot know if he is standing or sitting "idly" within 1,000 feet of a prohibited area, since the property boundaries are unknown. [*Id.* ¶ 89]. A more developed factual record will assist the Court in determining the viability of that claim.

Accordingly, the motions to dismiss Plaintiff's claims based on vagueness and impossibility will be denied.

#### 4.      Criminal Liability without Guilty Knowledge (Count VII)

While Plaintiff's vagueness and impossibility claim is plausible, his related claim, alleging that the Act imposes strict criminal liability, is not. Plaintiff contends that the Act—and in particular the geographical restrictions—violate the Due Process Clause by imposing criminal liability for passive conduct, without requiring proof that the offender has notice of the duty to comply. [Compl. ¶ 133]. In support of this claim, Plaintiff cites *Lambert v. California*, 355 U.S. 225 (1957). [*Id.* ¶ 132]. Defendants maintain that the Act does not impose strict liability and *Lambert* does not apply. [Rausch's Memo at 13–15].

The Court agrees that *Lambert* is inapposite here. In that case, the Supreme Court considered whether a defendant who had no actual knowledge of a city ordinance making it unlawful for any felon "to be or remain in Los Angeles for a period of more than five days without registering," could be convicted for failing to register as required under the ordinance. *Id.* at 226. The Court found that the ordinance violated due process as applied because the defendant had no notice of the registration requirement and the circumstances were not such that they "might move one to inquire as to the necessity of registration." *Id.* at 229. In reaching this conclusion, the Court reasoned that "[w]here a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process." *Id.* at 229–30. The *Lambert* decision provides a narrow exception to the usual rule that ignorance of the law is no excuse.

Unlike the defendant in *Lambert*, who had no notice of the city's reporting requirement, Plaintiff has actual knowledge of his duty to comply with the Act's geographical restrictions and other requirements. Indeed, the Act mandates that all offenders receive such notice. *See* Tenn. Code Ann. § 40-39-205. Moreover, criminal liability does not attach unless an offender "knowingly" engages in the conduct that is prohibited by statute. *Id.* § 39-11-302(b). Thus, the Act does not impose criminal liability for passive conduct without guilty knowledge. In raising this claim, Plaintiff may be arguing that despite being aware of the Act's requirements, he does not know how to interpret and comply with them. However, to the extent he raises that argument, his claim is duplicative of the vagueness and impossibility claim discussed above. Defendants' motions to dismiss Count VII will therefore be granted.

### D.     First Amendment (Count V)

In his remaining claim, Plaintiff asserts that the Act violates his First Amendment right to freedom of speech [Compl. ¶¶ 77, 125–28]. He cites two separate grounds for this allegation.

## 1. Internet Identifier Reporting

First, Plaintiff asserts that the internet identifier reporting requirement violates the First Amendment, both on its face and as applied.[8] [*Id.* ¶ 127]. Because of this requirement, Plaintiff asserts, he is unable to engage in anonymous political speech online and fears his online activity will be monitored by law enforcement. [*Id.* ¶¶ 78, 80–81]. Defendants contend that the internet identifier reporting requirement is constitutional because it helps protect the public from sex offenders, does not prevent an offender from accessing the internet, and makes online identifiers available to law enforcement, but not the public at large. [Rausch's Memo at 20–21]. They also assert that Plaintiff's facial claim fails because he does not identify a substantial number of instances where the internet identifier reporting requirement is unconstitutional. [*Id.* at 20].

The First Amendment protects anonymous speech, including the right to speak anonymously over the internet. *Signature Mgmt. Team, LLC v. DOE*, 876 F.3d 831, 835 (6th Cir. 2017). "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without fear of economic or official retaliation or concern about social ostracism." *Id.* (citing *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (cleaned up). However, like all First Amendment speech rights, the right to speak anonymously online is not absolute. Content-neutral regulations—such as the internet identifier reporting requirement—are constitutional if they satisfy intermediate scrutiny. *See Crookston v. Johnson*, 841 F.3d 396, 403 (6th Cir. 2016).

---

[8] Unlike an as-applied challenge—which seeks to invalidate a law as applied to the plaintiff's particular case—a facial challenge is an effort "to invalidate the law in each of its applications, to take the law off the books completely." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009).

To withstand intermediate scrutiny, a law must be narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication of the information." *Id.*

While Plaintiff's factual allegations in support of this claim are somewhat thin, he plausibly alleges that the internet identifier reporting requirement burdens his political speech and therefore is not narrowly tailored to him. Further factual development of the record will help the Court determine whether this reporting requirement satisfies intermediate scrutiny. *See Doe v. Haslam*, 2017 U.S. Dist. LEXIS 25070, at *56 ("Even assuming that the Act serves a significant governmental interest, the Court is unable to conclude that [the internet identifier reporting requirements are] sufficiently narrowly tailored without the benefit of a full factual record."); *Jackson v. Rausch*, No. 3:19-CV-377, 2020 U.S. Dist. LEXIS 239259, at *22–23 (E.D. Tenn. Dec. 21, 2020) ("Faced only with the bare allegations of the Amended Complaint and the Act's language, the Court is unable to determine the real-world effect of the Act on internet use or the burden the Act's restrictions place on Plaintiff's internet speech, let alone whether the requirements serve a significant government interest."). Therefore, Plaintiff's as-applied challenge will proceed.

With respect to Plaintiff's facial challenge, Defendants are correct that the Complaint does not list a substantial number of instances where the requirement violates the First Amendment. *See Connection Distrib. Co. v. Holder*, 557 F.3d 321, 336 (6th Cir. 2009) (explaining that to succeed in a First Amendment facial challenge, a plaintiff must demonstrate that a substantial number of instances exist in which the statute cannot be applied constitutionally.). However, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional

25

challenge." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). Rather, the distinction "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Id.* Given that Plaintiff has sufficiently pled an as-applied challenge, the Court will not dismiss the facial challenge at this time.

Defendants' motions to dismiss Plaintiff's First Amendment challenge to the internet identifier reporting requirement will therefore be denied.

### 2. Access to Places Associated with Speech

Second, Plaintiff alleges that exclusion zones violate his First Amendment rights by restricting his access to places commonly associated with speech. [Compl. ¶¶ 82, 128]. In support of this claim, he asserts that he is unable to attend a public meeting at a school or a demonstration at a park if children are present. [*Id.* ¶ 82]. However, the Act's geographical restrictions are not aimed at suppressing speech. And as Defendants point out, "laws restricting sex offenders' proximity to schools or parks have been . . . upheld under rational basis review because courts have found they do not implicate the First Amendment or involve a fundamental right." *Doe v. Prosecutor, Marion Cnty.*, 705 F.3d 694, 702 (7th Cir. 2013). Plaintiff fails to allege facts showing that exclusion zones serve no rational purpose or that his speech has been unduly burdened by them. Therefore, to the extent Plaintiff's First Amendment claim is based on his lack of access to locations within exclusion zones, Defendants' motions to dismiss will be granted.

### IV. CONCLUSION

As discussed above, Plaintiff's motion for extension of time to file a response is **GRANTED**. The motion to dismiss the Sheriff's Office is also **GRANTED**. Defendant Rausch and Defendant Garrett's motions to dismiss are **GRANTED in part and DENIED in part**. Specifically, Plaintiff's claims alleging violations of the Ex Post Facto Clause (Count I);

26

Procedural Due Process (Count III); Substantive Due Process – Right to Travel (Count II); Substantive Due Process – Right to Work (Count IV); First Amendment – Exclusion Zones (Count V, part 2); and Strict Liability (Count VII) are **DISMISSED**. The case will proceed as to Plaintiff's claims alleging violations of the First Amendment – Internet Identifier Reporting Requirement (Count V, part 1); Due Process – Vagueness and Impossibility (Count VIII); and the Eighth Amendment (Count VI).

So ordered.

ENTER:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE